**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DENNISE JEAN ORAND,**

      **Plaintiff,**

**v.**                                       **Case No:   6:14-cv-523-Orl-41GJK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

_____

**REPORT AND RECOMMENDATION**

Dennise Jean Orand (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income ("SSI"). Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: (1) failing to state with particularity the weight given, and the reasons therefor, as to a portion of the opinion of a consultative examining physician, Dr. Lynn Harper-Nimock, and the opinion of a registered nurse; (2) giving great weight to the opinion of a non-examining physician; and (3) failing to order a consultative mental health examination when the record evidence shows the presence of a "emotional issues." Doc. No. 16 at 9-15. For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's final decision.

**I.**    **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity.  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience.  If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work.  At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted).  The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II.    STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well

as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider evidence detracting from evidence on which Commissioner relied).   The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"   *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.   ANALYSIS.

### A.  Opinion Evidence.

On December 27, 2010, Claimant filed an application for SSI, alleging an onset of disability date as of June 3, 2010.  R. 226-230, 245.  Claimant argues that the ALJ erred by failing to state with particularity the weight given, and the reasons therefor, to a portion of the opinions of a consultative examining physician, Dr. Lynn Harper-Nimock (R. 590-608), and to the opinion registered nurse (R. 353).  Doc. No. 16 at 9-11.  Claimant also argues that the ALJ erred by giving "great weight" to the opinion of a non-examining physician.  Doc. No. 16 at 12.

### 1.  Dr. Harper-Nimock.

At the center of this dispute is the ALJ's handling of Dr. Lynn Harper-Nimock's consultative, examining opinion.  R. 33-34 (ALJ's discussion of opinion); R. 508-608 (Dr. Harper-Nimock's opinion).   In the decision, the ALJ accurately describes Dr. Harper-Nimock's examination and opinion as follows:

> On July 30, 2012, the claimant presented to Lynn Harper-Nimock, M.D. for a consultative orthopedic exam.  The claimant reported history of motor vehicle accident in June 2010.  She alleged some decreased memory.  She admitted that she was only using over-the-counter Ibuprofen.  She admitted that she could cook, shower, and dress herself.  Her gait was normal.  She could not walk on her

heels, toes, or squat. Her stance was normal. She needed no help changing for exam but needed some help getting on/off exam table. She had mild trapezius spasm in her neck with decreased range of motion. She had decreased range of motion of lumbar spine, hips and knees. Neurologically, she was intact. Strength was 5/5. Dexterity of both hands was maintained as well. X-rays of the bilateral knees were normal. X-rays of the right shoulder showed moderate degenerative osteoarthosis [sic]. X-rays of the left should showed mild degenerative osteoarthrosis. X-rays of the cervical spine showed mild degenerative osteoarthrosis. X-rays of the lumbar spine showed mild degenerative osteoarthrosis. Diagnoses included degenerative disc disease with radiculopathy, degenerative joint disease and internal derangement of left shoulder with ORIF.

Dr. Harper-Nimock completed a Medical Source Statement and opined that the claimant was capable of lifting/carrying up to 10 pounds occasionally. She could sit for 4 hour [sic] (60 minutes at a time); stand for 4 hours (10-15 minutes at a time) and walk for 4 hours (15 minutes at a time) in an 8-hour workday. She is never to reach overhead with her left hand. She is limited to occasionally reaching overhead with her right hand. She is limited to occasional reaching (all other directions), handling, fingering, feeling, pushing, and pulling with both hands. She is limited to operating foot controls occasionally with both feet. She is never to climb ladders or scaffolds, kneel, crouch or crawl but can occasionally climb stairs or ramps, balance and stoop. She is never to be exposed to the following: unprotected heights; dusts, odors, fumes and pulmonary irritants; extreme colds; extreme heat and vibrations. She is limited to occasional exposure to the following: moving, mechanical parts; operating a motor vehicle and humidity/wetness.

*Compare* R. 33 *with* R. 590-608. Dr. Harper-Nimock's opinion (R. 603-608) is more restrictive than the ALJ's residual functional capacity assessment ("RFC") (R. 27).[1]

---

[1] The ALJ determined that the Claimant has the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . except she can lift/carry 10 pounds frequently and 20 pounds occasionally. She can sit and stand for 8 hours but would need to alternate her body posture every 30 minutes. She can walk for up to 4 hours. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She can occasionally balance but she should not bend, squat, stoop, crouch or crawl. She can use foot pedals but can use arm pedals with the right arm only. No restrictions on her right arm, hand and shoulder. As to her left hand, arm and shoulder, she is restricted from pulling and from overhead reaching only. There would be no vision, hearing or

Ultimately, the ALJ did not adopt Dr. Harper-Nimock's opinion.   R. 34.   The ALJ states:

> [The ALJ] giv[es] this opinion <u>restricted weight</u> due to the fact that this examiner found no limitations in upper extremity and full grip strength, yet placed limitations with regard to use of upper extremities.   Therefore, [the ALJ] raised the ability to use the hands to frequent and the weight limitations went up as well, consistent with other treating doctor notes, including her own chiropractor. <u>Moreover, [the ALJ] note[s] that three of the jobs provided by the Vocational Expert] would have been within the limitations provided [by Dr. Harper-Nimock's opinion].</u>   However, with the additional limitations provided [by the ALJ] with regard to frequent use of the hands, the available jobs opened up and also included cashier work. . . .

R. 34 (emphasis added).[2]   Thus, the ALJ gave Dr. Harper-Nimock's opinion "restricted weight" because the doctor's physical examination did not note any upper extremity limitations and reflected full grip strength, yet the the doctor opined that Claimant has substantial limitations in her upper extremities.   R. 34.

While Claimant acknowledges the ALJ stated with particularity the reasons for giving restricted weight to the doctor's opinion with respect to Claimant's upper extremity limitations (Doc. No. 16 at 9-10), Claimant argues that the ALJ erred by failing to give any specific reasons for giving "restricted weight" and/or not adopting Dr. Harper-Nimock's opinion that Claimant was more limited in her ability to sit, stand, and walk than the ALJ found in the ALJ's RFC.   Doc.

---

communication issues.   She should avoid heights, vibrations or extreme changes in temperatures.

R. 27.   Thus, the ALJ's RFC is less restrictive than Dr. Harper-Nimock's opinion.   *Compare* R. 27 *with* R. 603-608.

[2] At the hearing, the vocational expert (the "VE") was asked whether a hypothetical individual with the Claimant's age, education, vocational profile, and the limitations set forth in Dr. Harper-Nimock's opinion could perform work that exists in the national economy.   R. 70-72.   The VE responded that such an individual, with all of the limitations contained in Dr. Harper-Nimock's opinion, could perform work as a surveillance system monitor, counter clerk, and call-out operator.   R. 71-73.

No. 16 at 10.[3]   The Commissioner maintains that the ALJ properly considered Dr. Harper-Nimock's opinion and substantial evidence supports the ALJ's decision to give the opinion restricted weight.   Doc. No. 17 at 9-10.   In the alternative, the Commissioner argues that any error by the ALJ with respect to Dr. Harper-Nimock's opinion is harmless based upon the testimony of the VE.   Doc. No. 17 at 14-15.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the ALJ to state with particularity the weight given to it and the reasons therefor.   *Id.* at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"   *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

In *Winschel*, 631 F.3d at 1179, the record contained opinions from a treating physician and, a non-treating, but examining physician.   *Id.*   The plaintiff-appellant argued the ALJ erred in addressing those opinions.   *Id.* at 1178.   The Eleventh Circuit noted the ALJ's opinion only address the treating physician's opinion once and "did not discuss the pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements

---

[3] Claimant raises no other issue with the ALJ's handling of Dr. Harper-Nimock's opinion.   Doc. No. 16 at 9-10.

were not considered." *Id*. at 1179.  The Eleventh Circuit then reversed the decision below and directed the ALJ to "explicitly consider and explain the weight accorded to the medical opinion evidence." *Id*.  As mentioned above, that evidence included an opinion from a non-treating, but examining, physician.  Thus, the Eleventh Circuit clearly held that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id*. at 1179.

In this case, the ALJ stated that he gave Dr. Harper-Nimock's opinion as a whole "restricted weight," but the ALJ's only stated reasons for doing so relate to the Claimant's grip strength and ability to use her upper extremities.  R. 34.  The ALJ did not articulate any reason(s) for giving "restricted weight" to Dr. Harper-Nimock's opinion related to Claimant's limitations in sitting, standing, and walking, which are also more restrictive that the ALJ's RFC.  R. 27, 34.  Thus, the undersigned finds that the ALJ erred by failing to articulate reasons for giving "restricted weight" to Dr. Harper-Nimock's opinion with respect to Claimant's limitations in sitting, standing, and walking.  *See Winschel*, 631 F.3d at 1179.

Generally, such an error will normally require remand.  *Id*.  However, in *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983), the Eleventh Circuit approved application of the harmless error doctrine in social security appeals.  In *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. Feb. 8, 2013) (unpublished), the Eleventh Circuit noted that it will decline to remand a case to the Commissioner "when doing so would be a 'wasteful corrective exercise' in light of evidence of record and when no further findings could be made that would alter the ALJ's decision." *Id*. (quoting *Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981)).[4]  Thus, any error, which does not affect a claimant's substantive rights or the end result, is considered harmless error and a remand is not required.  *See Riddles v. Astrue*, 2010 WL

---

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

5071320, at *5 (N.D. Fla. Nov. 3, 2010) (error harmless when it does not affect claimant's substantive rights); *Sample v. Astrue*, 2:09-cv-89-FtM-36SPC, 2010 WL 1751947, at *1 (M.D. Fla. Apr. 29, 2010) (error harmless when it does not affect the end result).

In this case, the ALJ received testimony from a VE.   R. 69-80.   The ALJ asked the VE whether a hypothetical individual of Claimant's age, education, vocational profile, and who had the precise limitations contained in Dr. Harper-Nimock's opinion, could perform any work.   R. 69-72.   The VE responded that an individual with those limitations could perform work as a surveillance system monitor, counter clerk, and call-out operator.   R. 72-73.   In the ALJ's decision, at step-five, the ALJ determined that Claimant retains the RFC to perform work as a surveillance system monitor, counter clerk, call-out operator, and cashier II.   R. 35-36.   Based on the testimony of the VE, the ALJ determined that the Claimant is not disabled.   R. 36.   In addition, when discussing Dr. Harper-Nimock's opinion in the decision, the ALJ specifically noted that the VE testified that an individual with the limitations contained in Dr. Harper-Nimock's opinion could perform three of the four jobs that the ALJ ultimately concluded the Claimant could perform under the ALJ's RFC.   R. 34 ("Moreover, [the ALJ] note[s] that three of the jobs provided by the [VE] would have been within the limitations provided [by Dr. Harper-Nimock's opinion.]").   Therefore, the fact that the ALJ erred in giving Dr. Harper-Nimock's entire opinion restricted weight and then adopted a less restrictive RFC did not affect the Claimant's substantive rights or the end result.   This is so because even if the ALJ adopted all of Dr. Harper-Nimock's limitations, based on the VE's testimony, the end result would be the same and, therefore, substantial evidence exists supporting the ALJ's finding that Claimant can perform work as a surveillance system monitor, counter clerk, and call-out operator.   R. 34, 71-73.   Thus, the undersigned finds that the ALJ's error, failing to articulate reasons for giving "restricted

weight" to Dr. Harper-Nimock's opinion related to Claimant's limitations in sitting, standing, and walking, is harmless. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (unpublished) (failure to state weight to opinion can constitute harmless error when correct application of regulations would not contradict ultimate decision). Accordingly, it is **RECOMMENDED** that the Court reject Claimant's argument.

### 2. Register Nurse.

On August 21, 2010, an Emergency Department Discharge Instructions note, signed by a registered nurse, states without explanation that Claimant is not to work until released for work duty. R. 353. Claimant argues that the ALJ erred by failing to state the weight given to this "opinion" and the reasons therefor. Doc. No. 16 at 10-11. Claimant's argument is misplaced for two reasons.

First, the ALJ is not required to state with particularity the weight given to the opinions of registered nurses because they are not acceptable medical sources and their opinions are not "medical opinions" under the regulations. The regulations provide that only physicians, psychologists or other acceptable medical sources can offer medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); SSR 06-03p (only acceptable medical sources can offer medical opinions); *Profita v. Astrue*, No. 5:09-cv-319-Oc-10GRJ, 2010 WL 3702467, at *5 (M.D. Fla. Sept. 16, 2010) (registered nurse is not an acceptable medical source).[5] As the opinion at issue (R. 353) was offered by a registered nurse, who is not an acceptable medical sources under the regulations, the opinion is not medical opinion and the ALJ was not required to state with particularity the weight given to it and the reasons therefor. Second, the statement at issue is not

---

[5] Only licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists are considered acceptable medical sources under the regulations. *See* 20 C.F.R. § 404.1513(a)(1) – (5).

an "opinion" under *Winschel*.   R. 353.   The statement merely states that Claimant is not to work until released, which does not meet *Winschel*'s definition of an opinion.   *See supra* p. 6. Accordingly, it is **RECOMMENDED** that the Court reject Claimant's argument.

### 3.   Non-Examining Physician's Opinion.

In the decision, the ALJ states the following with respect to the non-examining physician's opinion:

> On March 22, 2011, State Agency physician, Clarence Louis, M.D. reviewed the available medical evidence and affirmed the prior RFC, which found the claimant capable of light exertional work (Exhibit B7F). . . .
>
> As for the opinion of the State Agency physician atB7F [sic], I give this opinion <u>some weight</u> to the extent that the claimant is capable of light exertional limitations as the claimant can lift/carry 10 pounds frequently and 20 pound occasionally.   Due to her neck and lumbar issues, she can sit and stand for 8 hours but would need to alternate her body posture every 30 minutes.   Due to her knee osteoarthritis, she can walk for up to 4 hours.   She can never climb ladders, ropes or scaffolds.   She can occasionally climb ramps or stairs.   She can occasionally balance but she should not bend, squat, stoop, crouch or crawl.   Due to her status post arthroscopy on the left side, she can use foot pedals bust should not use arm pedals with the left arm (no pulling with left arm).   No restrictions on right arm, hand and shoulder.   On left side, restrict her overhead reaching only.   There would be no vision, hearing or communication issues. She should avoid heights, vibrations or extreme changes in temperature due to all of her impairments.

R. 32, 34 (emphasis added).[6]   Thus, the ALJ gave "some weight" to the non-examining physician's opinion.   R. 34.

Claimant argues that the ALJ erred by "giving <u>great weight</u> to the opinion of a non-examining state consultant."   Doc. No. 16 at 12 (emphasis added).   Claimant is correct that, generally, the opinions of non-examining physicians are entitled to little weight and, standing

---

[6] Exhibit B7F is found at R. 347.   Dr. Louis's non-examining opinion simply affirmed the RFC opinion of an earlier non-medical state agency single decision maker.   R. 347 (citing R. 90-97).

alone, do not constitute substantial evidence upon which to base a decision.   Doc. No. 16 at 12

(citing *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990)).   However, in this case, the

ALJ did not give the non-examining physician's opinion great weight, but only some weight and

the ALJ did not base the decision on the opinion of the non-examining physician.   R. 27-35.

Accordingly, it is **RECOMMEND** that the Court reject Claimant's argument.

**B.  No Duty to Order Consultative Examination.**

Claimant argues that the ALJ erred by failing to order a consultative mental health

examination and, therefore, the ALJ's finding at step-two that Claimant's anxiety is not a severe

impairment is not supported by substantial evidence.   Doc. No. 16 at 13-15.   The Commissioner

maintains that the Claimant failed to meet her burden to demonstrate that she has a severe mental

impairment or that a consultative examination was necessary for the ALJ to make an informed

decision in this case.   Doc. No. 17 at 4-7.

The record in this case shows that Claimant has experienced "emotional issues,"

depression, and anxiety.   R. 333-334 (emotional issues); 350, 352, 521, 530 (anxiety); 609

(depression).   On December 25, 2010, Claimant's treating orthopedist recommended that

Claimant see either a psychiatrist or psychologist.   R. 334.   However, in her application for

benefits, Claimant did not allege disability based upon any mental health impairment.   R. 107,

109.   In Claimant's disability worksheets, she reported that she did not receive any medical

treatment for mental health issues.   R. 252, 277.   At the hearing, Claimant and her counsel

acknowledged that she previously filed, but later withdrew, an application for disability benefits

based primarily upon mental health issues.   R. 49-50, 56.   Claimant also testified that she did

not allege disability based upon depression, anxiety, or bipolar disorder in the current application

for benefits at issue.   R. 56.   Claimant testified, in part, that her prior allegations were based

upon her "unhealthy marriage."  R. 56.  Thus, Claimant has not alleged disability based upon

any mental health impairment.  The ALJ is not required to investigate an impairment that is

neither alleged in a claimant's application, nor testified to at the hearing.  *See Street v. Barnhart*,

133 F. App'x 621, 627 (11th Cir. 2005) (unpublished) (quoting *Pena v. Chater*, 76 F.3d 906, 909

(8th Cir. 1995)).  *See also Robinson v. Astrue,* 365 F. App'x 993, 995 (11th Cir. 2010)

(unpublished) (same).   As such, the ALJ committed no error at step-two and was not required to

further develop the record or order a consultative examination for condition(s) that Claimant did

not allege were severe or contributed to her allegations of disability.   Accordingly, it is

**RECOMMENDED** that the Court reject Claimant's argument.

IV.    **CONCLUSION.**

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.    **AFFIRM** the final decision of the Commissioner; and

2.    Direct the Clerk to close the case.

A party failing to file written objection to a magistrate judge's findings or

recommendations within fourteen (14) days of issuance of the Report and Recommendation,

waives the right to challenge on appeal the district court's order based on unobjected-to factual

and legal conclusions.   If the parties have no objection to this report and recommendation, they

may promptly file a joint notice of no objection.

Recommended in Orlando, Florida on August 5, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy